24 P.3d 680

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Lloyd T. WEST, Defendant–Appellant.**

**No. 21844.**

Intermediate Court of Appeals of Hawai'i.

March 8, 2000.

Certiorari Granted April 3, 2000.

Richard K. Minatoya, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

Linda C.R. Jameson, Deputy Public Defender, on the briefs, for defendant-appellant.

BURNS, C.J., ACOBA, and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Lloyd T. West (West) appeals the July 20, 1998 judgment of the second circuit court convicting him of seven counts of sexual assault in the first degree and sentencing him to imprisonment.

We vacate the judgment because the trial court erroneously excluded impeachment evidence alleging that the complainant had made a false allegation of an unrelated but similarly situated sexual assault.

## I. Background.

In 1993, four-year-old Mary Minor (MM) lived with her mother Jane Roe (Jane) and her mother's boyfriend Jack Doe (Jack) on the ranch West managed for his ex-wife.

Residents of the ranch lived in a two-story building which contained five apartment-type units on its first level and two on its second level. As was the case with the other residents, Jane and Jack enjoyed reduced rent in exchange for work on the ranch.

Jane, Jack and MM lived on the second floor of the building, adjacent to West's unit.

On August 18, 1997, West was indicted by the grand jury on the following counts:[1]

[*COUNTS ONE–FOUR:* ]

That during or about the period of February 1, 1993, through May 28, 1993, inclusive, in the County of Maui, State of Hawaii, [WEST] did knowingly subject [MM], a person less than fourteen (14) years old, to an act of sexual penetration, to wit, fellatio, thereby committing the offense of Sexual Assault in the First Degree in violation of Section 707–730(1)(b) of the Hawaii Revised Statutes.

[*COUNTS FIVE–EIGHT:* ]

1. Count nine was stricken from the indictment. During the trial, counts ten and eleven, charging Defendant–Appellant Lloyd T. West with sexual assaults against a different individual, were dismissed by the prosecutor.

That during or about the period of February 1, 1993, through May 28, 1993, inclusive, in the County of Maui, State of Hawaii, [WEST] did knowingly subject [MM], a person less than fourteen (14) years old, to an act of sexual penetration, to wit, by placing his penis in her vagina, thereby committing the offense of Sexual Assault in the First Degree in violation of Section 707–730(1)(b) of the Hawaii Revised Statutes.

MM testified at trial that during the time she lived next door to West, he engaged her in fellatio or sexual intercourse on eight separate occasions. In childish terms, she recounted in appalling detail the physical mechanics of the alleged assaults.

According to MM, her mother Jane witnessed several of the incidents, once while intoxicated, but did and said nothing about them.

In addition, MM testified she told Jane about the incidents, but nonetheless felt her mother did not believe her. According to MM, her mother's response to the revelations was a succinct, "Yeah, right."

On cross-examination, MM acknowledged that at first she told the police her mother did not see the sexual assaults, but later told them her mother knew about the incidents because her mother said she had "peeked".

MM also testified on cross-examination that she saw Jane having sex "a lot" with West in her apartment. She also claimed she saw her mother having sex with another ranch resident, John Smith (John).

Because MM felt no one would believe her, she did not tell anyone else until March 1997.

In March 1997, MM was residing with her maternal grandparents and their adopted daughter K.

Grandmother testified that, as members of the Mormon Church, she and grandfather held family councils once or twice a month, during which they counseled K. about moral values and related matters.

According to grandmother, MM was present during a family council in which K. was being counseled about keeping herself morally clean. After grandmother and MM left the council, MM asked grandmother what was meant by "morally clean." Grandmother answered that it meant not to let anyone touch her private parts. At this point MM dissolved into tears and in response to grandmother's concern told her, "Nana, my body is dirty." Disclosure of the sexual assaults followed. Soon after, MM confided in grandfather as well.

Grandmother spoke to several people, including the attorney who handled K.'s adoption, about MM's revelation before she and grandfather informed Jane in April 1997. At the same time, the grandparents told Jane they wanted to adopt MM because they felt adoption was necessary to keep her safe. At the time, Jane was opposed to the adoption idea.

Grandmother reported MM's allegations to the Maui Police Department (MPD) in June 1997.

MPD Detective John Johnson (Detective Johnson) conducted a videotaped interview with MM. During the interview, MM told Detective Johnson that when she was six years old, an individual named Ashley molested her. According to MM, Jane was present when Ashley molested her. The police did not take action on this allegation.

MM also underwent a physical examination. Dr. William Kepler, a pediatrician with expertise in examining child sexual assault victims, examined MM but did not find any indications of sexual assault. Dr. Kepler also testified that MM's hymen appeared intact, but explained how penile sexual penetration could occur without breaking the hymen.

Jane testified that MM never told her about being sexually abused. Jane denied ever witnessing West touch MM inappropriately. And she denied telling MM that she had "peeked" and seen West engage in sex acts with her.

Although Jane admitted she drinks beer, she testified she has never been so intoxicated that she would not remember her child being sexually molested in her presence. Jane also stated that she never engaged in sex with West, or John.

John testified that he never had sex with Jane.

During West's opening statement, the following colloquy took place:

[Defense Counsel]: What else did [MM] tell the detective when she spoke to him? Well, she didn't limit her allegations of sexual molestation to—

[The Prosecution]: Your Honor, objection. Your Honor, may we approach the bench?

THE COURT: Yes.

(The following was held at the bench outside of the hearing of the jury.)

. . . .

[The Prosecution]: Counsel is going to question into—I'm assuming—other sexual acts with other people other than defendant.

Right now there's no actual [Hawai'i Rules of Evidence (HRE) Rule 412] motion written. She's not allowed to say whether or not this child is alleging sexual misconduct on other perpetrators. Other perpetrators are not disclosed.

Until counsel has a good-faith basis to attack credibility by bringing in other perpetrators to deny it, she should not be able to bring it in. Its improper. [HRE Rule 412] precludes it.

. . . .

[Defense Counsel]: This is absolutely not [HRE Rule 412]. We're talking about what a child made up to a detective, and she made allegations against other individuals.

She mentioned her mother and her grandmother in relation to it. And it's certainly—the state wanted this for a motion in limine that's what the state should have done.

. . . .

THE COURT: Don't mention it. You can—we can take it up as soon as we have [a] chance. Once that's said, that will . . . prejudice the jury. So don't mention it. If it's—we can address it at a hearing if it's appropriate. We can question into it and—

. . . .

[Defense Counsel]: . . . My, your Honor, offer of proof that I would make if permitted today would—I would tell [the] jury that she made allegations that when she was six and living with her grandmother she was abused in her mother's presence at the home about a block and a half away from the grandmother's home by someone named Ashley.

She places other people there at the same time that this occurred. And being that if she's making up allegations, then allegations that she made against defendant are equally suspect and it's certainly reasonable, and I don't think it is fair to say that defense can't get into this in opening statement.

. . . .

[The Prosecution]: This is sexual conduct. Unless this attorney has Ashley in her back pocket ready to testify and contradict the victim, she can't bring that up because all it is her arguing in an opening statement saying that the child was lying.

Because this—with no proof to attack the child's credibility. You don't attack credibility without a good-faith proof. Right now it's just counsel—

THE COURT: Good-faith belief.

[Defense Counsel]: I have a good-faith belief. It's not a question about good-faith evidence, but what the evidence will show is the police never attempted to follow up on this.

THE COURT: Sustained.

Before the State's direct examination of MM, West again raised the issue of her allegation that she was sexually molested by Ashley:

[Defense Counsel]: The other request your Honor is I'd like to take [an] issue—I have questions to ask this witness about the matters that the Court would not allow me to go into on opening statement. It is clearly not [HRE Rule 412] material. This is not a [HRE Rule 412] issue.

. . . .

[Defense Counsel]: I'm not talking about sexual conduct. I'm talking about other baseless allegations which is a com-

pletely different thing. I'm not pointing to other sexual behavior by this child.

. . . .

[Defense Counsel]: . . . Detective Johnson did a videotaped interview of [MM] on June 24, 1997. The entirety of the interview was videotaped. Unfortunately the quality of the tape is such that it's very difficult to hear. And some of it is inaudible.

. . . .

[The Prosecution]: According to my notes, it didn't happen in [West's] house. I think that's taken out of context. This also happened to her in somebody's house—a boy named Ashley who was 18 year[s] old did something to her, touched her private parts, her vagina and okole.

And there was . . . she's describing him sticking his hand in her shorts [he] touched it.

. . . .

[Defense Counsel]: Because I think it goes to the fact that the child—I think there's an issue as to whether the child makes up these allegations or has somehow been influenced to make such allegations.

. . . .

[The Prosecution]: Judge, yes. It's hard for me to remain quiet here. The way to impeach somebody is to have competent evidence or a good faith belief that the person is not telling the truth; right? Now, your Honor, but we don't know if these are true or not true. These are allegations of sexual misconduct in another adult male, 18–year–old male.

Ashley is not on trial. The victim is not on trial, and at this point the defense counsel is trying to put the victim on trial by making everything she says go towards her credibility with no good faith basis to back up what she's saying.

. . . .

But for the defense simply to come out and now I guess to argue—because she's making other allegations and [HRE Rule] 412 addresses exactly that.

It tries to get out—or it tries to avoid prejudice to the victims . . . and it doesn't allow counsel in any way, shape, or form to bring in other acts of sexual misconduct because they are prejudicial.

It addresses credibility too. Even if a witness's credibility is at issue, you can't impeach credibility [by] other acts of sexual misconduct.

. . . .

We shouldn't get into it, and it's more prejudicial than probative and confusing and [a] waste of the jurors' time. It's going to mislead them because it has no probative value.

. . . .

[Defense Counsel]: Thank you. [HRE Rule] 412 simply does not apply. We're not talking about the past sexual behavior of this witness. . . . [Jane] will testify that there was never an occasion when someone molested her child by sticking his hand in her shorts and touching her child in her presence.

So there is evidence that would contradict this. It would, therefore, be proper impeachment under [HRE] Rule 802.1 because it is [an] inconsistent statement that was recorded in substantially verbatim fashion and also within compliance with [HRE] Rule 613(b). The witness would be asked is if she made the statement and [the] circumstances of making the statement.

So is it proper impeachment in that sense. And we do have a separate piece of evidence which is [Jane's] testimony that this did not occur.

. . . .

[Defense Counsel]: Judge, she was asked if anyone else was there. She answered my mom and she was—

. . . .

[Defense Counsel]: [S]he was asked later what if anything mom did. And she said mommy didn't say anything to Ashley. So the clear implication is she's placing mother there at the time that he claims the incident occurred.

THE COURT: Okay. Well, thank you for your arguments on this. After thinking about it for a while, the Court is going to sustain the objection. Ready to go.

During his cross-examination of MM, West again sought leave to question her about her allegation of molestation by Ashley, but the court denied the request.

West also sought to cross-examine Jane about MM's allegation against Ashley:

[Defense Counsel]: And secondly, regarding [Jane], citing the Court to *State v. Kelekolio*, which is a 1993 Supreme Court decision in which it was found that evidence of a complainant's fantasies were legitimate fodder for the jury to consider, and that was a case involving a handicapped—a handy van rider who had some, I think, mental retardation, but at any rate was impaired in some ways, and ... she had made allegations of other people abusing her.

I would again ask for the—for leave to ask [Jane] about the allegations that I was not allowed to ask [MM] about regarding this individual Ashley, ... she did make allegations that this person had touched her in her mother's presence and that her mother didn't say or do anything about it, which is almost identical to the allegations that she's made about Mr. West.

. . . .

It does also make the point in the discussion that that issue has nothing to do with [HRE] Rule 412.

. . . .

THE COURT: Well, I tell you what. Make a copy of that case and give it to both the prosecutor and myself, and I will look at it before you begin your cross-examination.

. . . .

[The Prosecution]: Your Honor, it seems pretty clear that in order for defense counsel to ... bring in any prior acts, I guess [HRE] Rule 412 doesn't apply, pursuant to *Kelekolio*, to acts or allegations [regarding] other persons, but what does apply here and what is required by the case law is that counsel has to show a habitual propensity or habitual fantasy.

And in the commentary on page 496 and 497 of the case, it does state how habit is to be proven pursuant to [HRE Rule] 406. It states how shall a habit be proved is

based on personal knowledge so as to conform with [HRE] Rule 602 and 701 requirements, and above it it states habit is a specific and invariable practice.

Right now all we have is another allegation of sexual misconduct [against] another adult, a person by the name of Ashley that is hardly a habit or a routine or habitual fantasy [enabling] Counsel to bring that up.

. . . .

[Defense Counsel]: *Kelekolio* does not say that you have to have multiple incidences of fantasy. They note in ... the *Kelekolio* case that—apparently that is what they had in that case, that there were approximately three witnesses ... the defendant wanted to examine regarding this.

What *Kelekolio* says [is] that evidence of the complainant's fantasies was central to the defense case ... because if the jury believed that the complainant fantasized [about] many events in her life, then it would also be inclined to believe that she had fantasized the events concerning *Kelekolio*.

In this instance what we're saying is that if the complainant fantasized that there was a sexual molestation [by] someone named Ashley, which she claims ... her mother witnessed, then the fact that she claims ... there was sexual molestation with [West] which she claims that her mother witnessed is so directly related that the jury should be allowed to know that she's claiming at least another instance witnessed by her mother, which her mother would deny witnessing as she denies witnessing anything with [West].

. . . .

[Defense Counsel]: I would believe that the rather shocking nature of that claim by the child is such that the jury should be allowed to know that she claims that the mother saw it on another occasion years later and did nothing.

And the offer of proof that we make is that [Jane] would testify that she doesn't know anyone named Ashley. She never saw someone named Ashley put his hand down [MM's] shorts and touch her, and that she never saw anyone named Ashley

or otherwise do such a thing, and she would not have done nothing had she seen such a thing.

. . . .

THE COURT: All right. Thank you. The way I am reading this case is that the Supreme Court did make a distinction with regard to [HRE] Rule 412 where the evidence is not of prior sexual conduct but relates to cognition about sexual activity and says basically that [HRE] Rule 412 wouldn't apply if that evidence was otherwise admissible.

And then as I understand it, turns then to decide or to examine whether statements about sexual fantasies of this particular complaining witness would be admissible as—to show her habit to fantasize and examines it from the point of view of habit-type evidence.

It does point out that—in the note that the sheer number of prior instances of particular conduct is an important factor in establishing a habit, but in—perhaps even more important is evidence from which an inference of consistency and invariability can be drawn.

Here the problem is we don't know that it's a fantasy, and there is no evidence that it is a fantasy. And secondly, there is not enough instances in my opinion to call it a habitual propensity or habitual response. So I am going to sustain the objection.

During the settling of jury instructions, West objected to the State's proposed instructions defining the elements of the offenses. The court gave the instructions over West's objection.

At the end of the State's rebuttal argument, the deputy prosecuting attorney closed as follows:

THE COURT: Time's up, Counsel.

[The Prosecution]: Your Honor, I have one more minute and I'm going to close here.

Ladies and gentlemen, when a child is physically injured and needs help, that child goes to the hospital. When that child needs spiritual help, she goes to the church. When a child needs justice, she comes to the jury. It's time for [MM] to know that her body is not dirty. It's time to know that she can be with God.

[Defense Counsel]: Objection. That is improper argument.

THE COURT: Sustained. Disregard the reference to God.

[The Prosecution]: I ask you, ladies and gentlemen, to do the right thing. Thank you.

The jury acquitted West on count four of the indictment but found him guilty as charged on the remaining seven counts.

## II. False allegation of sexual assault.

West complains that the trial court unconstitutionally abridged his right to confront adverse witnesses guaranteed to him by the United States Constitution and the Hawai'i State Constitution.[2]

■ The confrontation clause is embodied in sections 5 and 14 of article I of the Hawai'i State Constitution. The confrontation clause in the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, is essentially identical.[3]

2. West bases his claims under the United States Constitution on the Fifth, Sixth, and Fourteenth Amendments. The Fifth Amendment states, in relevant part, "[n]o person shall be . . . deprived of . . . liberty without due process of law[.]" The Sixth Amendment states, in pertinent part, "[i]n all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him; . . . [and] have compulsory process for obtaining witnesses in his favor[.]" The Fourteenth Amendment states, in relevant part, "nor shall any State deprive any person of . . . liberty . . . without due process of law[.]" West's claims under the Hawai'i State Constitution are based on the right of confrontation under article I,

section 14 and the right to due process under article I, section 5. Article I, section 14 states, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused, to have compulsory process for obtaining witnesses in the accused's favor[.]" Article I, section 5 states, in pertinent part, "[n]o person shall be deprived of . . . liberty . . . without due process of law[.]"

3. *State v. Apilando*, 79 Hawai'i 128, 131, 900 P.2d 135, 138 (1995); *State v. Calbero*, 71 Haw. 115, 124, 785 P.2d 157, 161 (1989).

West avers in this respect that the trial court erred in prohibiting his cross-examination of MM and Jane concerning MM's allegation that she was sexually molested by Ashley. West argues that this false allegation cast doubt upon the veracity of her allegations against him and should have been admitted to impeach her credibility.

The State counters that evidence concerning the allegation was properly excluded from the trial under Hawai'i Rules of Evidence (HRE) Rule 412. The State argues, in the alternative, that even if the Hawai'i Supreme Court's decision in *State v. Kelekolio* [4] removed the allegation from the ambit of HRE Rule 412, the evidence was nonetheless barred because West failed to establish a foundation that MM had a habitual propensity to make such allegations, as ostensibly required by *Kelekolio*.

█ A criminal defendant's right to cross-examine an adverse witness is implicit in the constitutional right of confrontation.[5]

█ Error in the application of evidentiary rules which prevents a criminal defendant from cross-examining an adverse witness is an unconstitutional abridgement of the right of confrontation.[6]

█ We consider questions of constitutional law by applying our independent constitutional judgment to the facts of the case.[7] In other words, we consider constitutional questions *de novo* utilizing the right/wrong standard.[8]

█ If there be constitutional error, we must determine whether the violation of the confrontation clause was harmless beyond a reasonable doubt.[9] In applying the harmless beyond a reasonable doubt standard we must examine the record to determine whether there is a reasonable possibility that the error might have contributed to the conviction.[10]

█ We disagree with the State's position that HRE Rule 412 is applicable and controlling, and conclude that a complainant's false allegation of an unrelated sexual assault is not evidence of "past sexual behavior" within the meaning and control of HRE Rule 412.

█ In sexual assault cases, character evidence as reflected in the "past sexual behavior" of the complainant is inadmissible pursuant to HRE Rule 412, Hawai'i's "rape shield" law. HRE Rule 412 provides, in pertinent part:

**Rule 412 Sexual assault cases; relevance of victim's past behavior.** (a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual assault, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual assault is not admissible to prove the character of the victim in order to show action in conformity therewith.

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual assault, evidence of an alleged victim's past sexual behavior other than reputation or opinion evidence is not admissible to prove the character of the victim in order to show action in conformity therewith[.] ...

. . . .

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which sexual assault is alleged.

**4.** *State v. Kelekolio*, 74 Haw. 479, 849 P.2d 58 (1993).

**5.** *State v. Corella*, 79 Hawai'i 255, 260, 900 P.2d 1322, 1328 (App.1995).

**6.** *State v. Pokini*, 57 Haw. 26, 29, 548 P.2d 1402, 1405 (1976) ("The exclusion of competent testimony designed to impeach the credibility of a material witness for the State was error that infringed upon a constitutional right of the accused, and as such was presumptively prejudicial.") (citation omitted).

**7.** *State v. Arceo*, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996).

**8.** *Whiting v. State*, 88 Hawai'i 356, 358, 966 P.2d 1082, 1084 (1998).

**9.** *Corella*, 79 Hawai'i at 261, 900 P.2d at 1328.

**10.** *State v. Balisbisana*, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996).

■ The purpose of HRE Rule 412 is to shield the sexual assault complainant from evidence of past sexual behavior offered to prove the complainant's character in order to show a "propensity or inclination to behave similarly on the occasion in question."[11] The reasons for exclusion of such evidence are: (1) that the evidence has little or no relevance on the issues of consent and credibility; (2) that the evidence tends to be misleading and time consuming; and (3) that the general admissibility of this evidence has deterred significant numbers of sexual assault victims from reporting or from prosecuting these crimes.[12]

■ HRE Rule 412 was taken verbatim from Federal Rules of Evidence Rule 412 (1978). In doing so, it was our legislature's intent "that the provisions of the Hawaii Rules of Evidence track very closely with the federal rules as supplemented by Hawaiian decisional law."[13]

According to Wright and Graham, rape shield laws are "designed to end the public degradation of rape victims and, by protecting victims from humiliation, to encourage the reporting of rape .... By restricting testimony on the victim's prior sexual behavior to that genuinely relevant to the defense ... [the law] will prevent a defendant from making the victim's private life the issue in the trial."[14]

In the seminal case of *State v. Kelekolio*, the Hawai'i Supreme Court held, however, that the phrase "past sexual behavior" in HRE Rule 412 does not comprehend "mere cognition, such as sexual fantasizing."[15]

In *Kelekolio*, the defendant, a Handi-van driver accused of kidnapping and sexually assaulting one of his passengers, sought to introduce evidence that the cognitively-challenged complainant had a tendency to relate imagined sexual escapades, and thus sought to cast doubt upon the reality of her allegations against him.[16]

On appeal in this case, the State raises HRE Rule 412 as a bar to the admissibility of evidence relating to MM's allegation that she was molested by Ashley. It is noteworthy, however, that the State conceded in argument on the issue below that "[HRE Rule 412] doesn't apply, pursuant to *Kelekolio* [.]"

And the trial court apparently agreed with the State: "The way I am reading this case is that the Supreme Court did make a distinction with regard to [HRE Rule 412] where the evidence is not of prior sexual conduct but relates to cognition about sexual activity and says basically that [HRE Rule 412] wouldn't apply if that evidence was otherwise admissible."

■ In any event, it should suffice to dispose of the HRE Rule 412 issue to point out that no conceptual distinction relevant or material to the discussion in *Kelekolio* appears between fantasies about participation in sexual adventures and false allegations about unrelated sexual assaults. Under *Kelekolio*, both are "mere cognition" to which HRE Rule 412 simply does not apply.

If bare extrapolation from the sexual fantasies in *Kelekolio* to the false allegation of molestation in this case does not suffice, however, we observe that a number of states have reached the same conclusion with respect to their rape shield provisions.[17]

11. Hawai'i Rules of Evidence (HRE) Rule 412 Supplemental Commentary.

12. HRE Rule 412 Commentary.

13. Sen. Stand. Comm. Rep. No. 22–80, in 1980 Senate Journal, at 1031, 1034.

14. 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5382 (1980).

15. *Kelekolio*, 74 Haw. at 521 n. 19, 849 P.2d at 77 n. 19.

16. *Id.* at 492–99, 849 P.2d at 65–68.

17. *Little v. State*, 413 N.E.2d 639, 643 (Ind.Ct. App.1980); *Cox v. State*, 51 Md.App. 271, 443 A.2d 607, 613 (1982) (recanted rape charges have "no relation to the chastity or any sexual misconduct of the [complainant]" so not within ambit of rape shield law); *Commonwealth v. Bohannon*, 376 Mass. 90, 378 N.E.2d 987, 990–92 (1978) (proposed cross-examination concerning complainant's false rape allegations did not relate to her prior sexual activity or reputation for chastity so rape shield statute inapplicable); *Miller v. State*, 105 Nev. 497, 779 P.2d 87, 89 (1989) (false accusations of sexual abuse or assault not related to unchaste character and thus not sexual conduct for rape shield purposes); *State v. Durham*, 74 N.C.App. 159, 327 S.E.2d

To quote one example, the Supreme Court of Virginia held that false allegations about unrelated sexual assaults are not excluded by Virginia's rape shield statute because the defendant "does not seek to prove that [the complainant] has engaged in 'prior sexual conduct' or that she has an unchaste character. He seeks to prove for impeachment purposes that [the complainant] makes false statements concerning sexual behavior." [18]

Although we recognize the humiliation and difficulty the complainant endures in a sexual assault trial, false accusations by the complainant are not the sort of intimate conduct shielded by HRE Rule 412. False allegations relate, instead, to the credibility of the complainant.

The State further contends, however, that *Kelekolio* places a hurdle before cognition evidence beyond that of HRE Rule 412—that *Kelekolio* requires that the cognition in question be habitual before it can be admitted at trial, even if it does not fall within the ambit of HRE Rule 412.

This was the State's final argument on the issue below, and the argument the trial court accepted in excluding the cognition evidence:

> [The Prosecution]: ... I guess [HRE Rule.412] doesn't apply, pursuant to *Kelekolio*, to acts or allegations [regarding] other persons, but what does apply here and what is required by the case law is that counsel has to show a habitual propensity or habitual fantasy.
>
> And in the commentary on page 496 and 497 of the case, it does state how habit is to be proven pursuant to [HRE Rule 406].
>
> ....
>
> THE COURT: ... [T]his case ... says basically that [HRE Rule 412] wouldn't

apply if that evidence was otherwise admissible.

And then as I understand it, turns then to decide or to examine whether statements about sexual fantasies of this particular complaining witness could be admissible as—to show her habit to fantasize and examines it from the point of view of habit-type evidence.

It does point out that—in the note that the sheer number of prior instances of particular conduct is an important factor in establishing a habit, but in—perhaps even more important is evidence from which an inference of consistency and invariability can be drawn.

Here the problem is we don't know that it's a fantasy, and there is no evidence that it is a fantasy. And secondly, there is not enough instances in my opinion to call it a habitual propensity or habitual response. So I am going to sustain the objection.

We do not, however, read *Kelekolio* to require that such cognition qualify as habit under HRE Rule 406 [19] in order to be admissible in a sexual assault case.

The supreme court in *Kelekolio* decided that HRE Rule 412 was inapplicable and thus not a bar to the defendant's cognition evidence, but nevertheless found no error in the trial court's exclusion of the evidence because the defendant had not laid a proper foundation for the evidence.[20]

The supreme court did not hold that the only road to admissibility for cognition evidence runs through HRE Rule 406.

The true teaching of *Kelekolio* is that because cognition evidence is not

---

920, 926 (1985) (child's accusation of abuse by father was evidence of "conversation or language" and therefore not excluded by rape shield statute); *State v. LeClair*, 83 Or.App. 121, 730 P.2d 609, 613 (1986) (evidence of child's previous false accusations of sexual abuse not evidence of past sexual behavior under rape shield law); *Clinebell v. Commonwealth*, 235 Va. 319, 368 S.E.2d 263, 264 (1988) (false statements concerning sexual behavior not offered to prove "prior sexual conduct" or that complainant has "unchaste character" so not "conduct" under rape shield statute).

18. *Id.*

19. **Rule 406 Habit; routine practice.** Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

20. *Kelekolio*, 74 Haw. at 496–99, 849 P.2d at 66–68.

blocked by the shield of HRE Rule 412, its admissibility is to be determined under the general rules of relevance:

> Accordingly, we believe that the term "behavior," as employed in HRE 412, was not intended in its "common language" sense to include mere cognition, such as sexual fantasizing. The threshold admissibility of such "cognition" evidence would be governed by the general rules of relevance. *See* HRE 401, 402, and 403 (1985).[21]

The supreme court's extensive discussion about habit evidence, confined to a footnote, was nothing more than its identification of the precise nature of the relevance of Kelekolio's cognition evidence, and an analysis of how his trial counsel could have laid a foundation for the evidence, in the face of the ban on character evidence[22] which pervades the general rules of relevance:

> Understanding the concept of habit is enhanced by comparison with rule 404, because there character and prior instances of conduct are inadmissible to establish action on a particular occasion "in conformity therewith." But when the previous practice of a person amounts to a "normal routine," ... rule 406 allows receipt of the evidence to prove action in conformity with the habit.[23]

Nowhere in *Kelekolio* did the supreme court exclude the possibility that cognition evidence could be admitted under the general rules of relevance by means other than a showing of habit.

In *Kelekolio*, the sexual fantasizing that purportedly gave rise to the charges against the defendant was part and parcel of a routine or habit of the mentally-retarded complainant, verging on the autonomic,[24] and under such circumstances HRE Rule 406 may well have been the most appropriate avenue of admissibility under the general rules of relevance. Indeed, with respect to fantasizing in general, we speak of a *tendency* to fantasize, or of a person *prone* to fantasizing.

But to impose a blanket requirement that all cognition evidence in sexual assault cases take the same route to admissibility is to shoehorn all defenses based on such evidence into one size that does not fit all, leaving many hobbled.

In the common case in which a corroborating instance of false accusation is impelled by a specific motive arising out of specific circumstances, a requirement that it pass as habit evidence is quite literally an oxymoron.

In *State v. Corella*, for example, we examined a case in which an allegedly false accusation of sexual assault could have been motivated by a " 'prototypical form of bias,' "—

---

21. *Kelekolio*, 74 Haw. at 521 n. 19, 849 P.2d at 77 n. 19.

22. **Rule 404 Character evidence not admissible to prove conduct; exceptions; other crimes.**
(a) Character evidence generally. Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of character of an· accused offered by an accused, or by the prosecution to rebut the same;
(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, 609, and 609.1.

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

23. *Kelekolio*, 74 Haw. at 496 n. 9, 849 P.2d at 67 n. 9 (quoting A. Bowman, *Hawaii Rules of Evidence Manual* § 406–2, at 122–24 (1990), and at 8–10 (Supp.1992)) (citations omitted).

24. *Kelekolio*, 74 Haw. at 495–99, 849 P.2d at 66–68.

the complainant's need to protect her relationship with her fiancé.[25] This kind of motivation has no necessary relationship to habitual propensity. It is, instead, a calculated response to circumstances which may never recur.

Where, as here, a defense relies upon a single corroborating instance of false accusation, restricting admissibility to habit evidence would be tantamount to precluding the defense.

In the constitutional context, the impropriety of imposing a special evidentiary restriction upon cognition evidence is readily apparent.

As we have already observed, *Kelekolio* removed cognition evidence in sexual assault cases from the public policy ban embodied in HRE Rule 412, and left the admissibility of such evidence to be determined under the general rules of relevance. To suggest that *Kelekolio* left in its wake a special restriction on such evidence would be to burden the right of confrontation without discernible—let alone compelling—justification.

▪ Our constitutions cannot abide such gratuitous restriction on the right of confrontation. The United States Supreme Court has held that exceptions to the right of confrontation can be allowed "only when necessary to further an important public policy."[26] The Hawai'i Supreme Court has followed suit.[27]

▪ Even in its rightful domain, HRE Rule 412 must yield in certain situations to the defendant's constitutional right of confrontation.

The rule by its own terms recognizes the ascendancy of the right, providing that evidence of a sexual assault victim's "past sexual behavior" may be admissible if it "is constitutionally required to be admitted."[28]

And the Hawai'i Supreme Court has stated that "HRE 412 cannot override the constitutional rights of the accused."[29]

▪ We conclude, therefore, that the trial court erred as a matter of law in barring evidence of MM's allegation of molestation by Ashley when it decided that "there is not enough instances in my opinion to call it a habitual propensity or habitual response."

Per *Kelekolio*, the evidence should have been admitted if admissible under the general rules of relevance.

Hitherto for the sake of discussion, we have been assuming that MM's allegation of molestation by Ashley was false. Obviously, the allegation would have no relevance to her credibility unless it was indeed false.

The trial court, in barring the evidence, also concluded that "we don't know that it's a fantasy, and there is no evidence that it is a fantasy."

We question the trial court's conclusion that there was no evidence of falsity.

West's offers of proof indicated that MM told Detective Johnson that her mother Jane saw Ashley molesting her. The offers of proof also included the assertion by Jane, a State witness, that there was never an occasion when someone molested MM in her presence.

On this basis, we believe the trial court should have concluded the evidence was relevant.[30]

**25.** *Corella,* 79 Hawai'i at 260–61, 900 P.2d at 1327–28 (quoting *Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988)).

**26.** *Coy v. Iowa,* 487 U.S. 1012, 1021, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

**27.** *Apilando,* 79 Hawai'i at 135, 900 P.2d at 142.

**28.** HRE Rule 412(b)(1).

**29.** *Calbero,* 71 Haw. at 124, 785 P.2d at 161 (defendant's constitutional right to confrontation dictates that he be allowed to cross-examine complainant regarding her statements to him about her past sexual conduct, in order to bolster his defense of consent).

**30.** HRE Rule 104(b)("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."); *State v. Gano,* 92 Hawai'i 161, 171–72, 988 P.2d 1153, 1163–64 (1999).

▆ The *Kelekolio* question still remains, however, whether the evidence was *admissible* under the general rules of relevance.

We surmise it was.

MM's allegation, if false, was evidence which could have impeached her credibility and cast doubt upon her charges against West.

HRE Rule 608(b) provides, in pertinent part:

**Rule 608 Evidence of character and conduct of witness.**

. . . .

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence.

▆ If false, the allegation was "probative of untruthfulness." False statements of a witness are relevant to a determination of the witness' credibility. For example, in *State v. Estrada*, the Hawai'i Supreme Court held that evidence of the assault complainant's falsification of an employment application should have been admitted at trial under HRE Rule 608(b), as it was pertinent to his credibility.[31]

As contemplated by the rule, West sought to inquire into the purportedly false allegation on cross-examination of MM for the purpose of impeaching her credibility. If MM admitted making the allegation and that it was false, the impeachment would have been complete.

If not, West had offered extrinsic proof that MM made the allegation in her videotaped interview with Detective Johnson, and that Jane would deny MM's assertion that she witnessed the event.[32]

▆ Evidence about MM's allegation was thus admissible under the general rules of relevance, subject of course to HRE Rule 403. As the HRE Rule 403 Commentary observes:

This rule ... recognizes the necessity for discretionary qualification of the general admissibility rule, based on such factors as potential for engendering juror prejudice, hostility, or sympathy; potential for confusion or distraction; and likelihood of undue waste of time.... Necessity for a Rule 403 "balance" can arise in a variety of contexts because of the pervasive nature of the principle. In particular, Rules 404(b), *608(b)*, and 609 implicitly call for application of this principle.

(Emphasis added).

It was for the trial court, in the exercise of its discretion,[33] to undertake the "Rule 403 'balance[.]'" The trial court's errors of law in excluding the evidence preempted, however, the exercise of its HRE Rule 403 discretion.

We can nevertheless conclude that the evidence would have passed muster under HRE Rule 403, given its central importance in the case and the relative insignificance of the countervailing factors.

HRE Rule 403 provides:

HRE Rule 608 Supplemental Commentary. *See also Miller*, 779 P.2d at 90 ("The defendant may thereafter present extrinsic evidence of the false accusations only if the complaining witness denies or fails to recall having made such accusations.").

**31.** *State v. Estrada*, 69 Haw. 204, 219, 738 P.2d 812, 823 (1987).

**32.** If the witness admits on cross-examination having committed the prior misdeed, then there is no need for the extrinsic evidence and Rule 403 will exclude it. Even if the witness denies the material, the Rule 403 balance is expected to dictate exclusion in a substantial number of cases. After all, the previous blanket ban was purportedly informed by Rule 403. But if the probative value of the extrinsic evidence of specific prior misdeeds is not substantially outweighed by the negative Rule 403 factors, it is admissible "in the discretion of the court."

**33.** *State v. Iaukea*, 56 Haw. 343, 349, 537 P.2d 724, 729 (1975) ("The responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court."); *see also* HRE Rule 403 Commentary.

Although relevant, evidence may be ex-cluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In a sexual assault case, where oftentimes the only direct witnesses to the alleged incident are the complainant and the defendant, evidence bearing upon the credibility of the complainant is of paramount importance.

The Supreme Court of Nevada has recognized that in sexual assault cases, "the complaining witness' credibility is critical and thus an alleged victim's prior fabricated accusations of sexual abuse or sexual assault are highly probative of a complaining witness' credibility concerning current sexual assault charges." [34]

The principle is no less true in this case.

No physical evidence directly corroborated the charges. MM's physical examination was inconclusive.

No eyewitness supported MM's charges. Although MM claimed Jane witnessed some of West's sexual assaults, Jane denied it. And West categorically denied the sexual assaults took place.

In the context of the trial, MM's credibility was the central issue in the case.

On the other hand, West had the means, the ostensible motive and the opportunity. MM made her charges in childish language but in startling clinical detail, which militated against any implication of coaching, either by adults or other children. Moreover, the incidents as described were heartrending and were made all the more affecting by the circumstances of their disclosure at the family conference.

Under these circumstances, West's need for the impeachment evidence was indeed critical. Under such circumstances, evidence that MM had made false allegations about an unrelated sexual assault, which like the charged assaults was witnessed by Jane without intervention or complaint, had the highest possible degree of relevance to the central issue in the case, credibility. [35]

Given the paramount probative value of the evidence, we might conclude it was admissible under HRE Rule 403, without more. *In Best Place, Inc. v. Penn America Ins. Co.,* for example, the Hawai'i Supreme Court held that where evidence "is clearly probative of material issues" in that it goes "to the very heart of the [threshold] issue ... its probative value clearly outweighs any prejudicial effect[,]" and the supreme court did so without expressly examining the countervailing factors under HRE Rule 403. [36]

The countervailing factors in this case are in any event featherweight in comparison.

While false allegations of sexual assault flatter no complainant, in this case no discernible malicious intent or other invidious purpose infected MM's allegation so as to unduly discredit her. Indeed, West's implied theory of the case was that an innocent MM was coached by her grandparents, who were pursuing their adoption of MM in the face of opposition from her mother Jane.

There was little likelihood of confusing the issues or misleading the jury, because MM's credibility was clearly the central issue in the case and it would appear unlikely any juror could miss the intended significance of the false allegation.

Admitting evidence of the allegation would not have involved undue delay or waste of time. The only evidence in the record or implied in the record concerning the allegation was MM's videotaped interview with Detective Johnson and Jane's denial that she witnessed the molestation. Ashley remains otherwise unidentified and the police conducted no follow-up investigation regarding the allegation.

---

**34.** *Miller,* 779 P.2d at 89 (citations omitted).

**35.** " '[P]robative value' is a compound concept, comprising the degree of relevance to prove one or more disputed facts plus the element of need." Addison M. Bowman, *Hawaii Rules of Evidence Manual* § 403–2B(1) (2d ed.1998). *See also* *State v. Clark,* 83 Hawai'i 289, 303, 926 P.2d 194, 208 (1996).

**36.** *Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 141, 920 P.2d 334, 355 (1996).

Finally, there was no risk of cumulation of evidence. The allegation involved an incident entirely apart in time and place from the incidents giving rise to the charges.

In sum, the probative value of the evidence more than substantially outweighed the countervailing HRE Rule 403 factors, and not vice versa. As a result, we do not hesitate to conclude that the evidence should have been admitted and that the trial court erred in excluding the evidence at trial.

██ In next considering whether to vacate West's convictions as a result of the constitutional error, in other words, whether there is a reasonable possibility the error contributed to West's convictions, we reiterate our HRE Rule 403 analysis. It suggests that the exclusion significantly weakened West's defense.

In addition, the State's case, though compelling for reasons previously discussed, was not overwhelming, so we cannot conclude that the evidence excluded would have been but a trifle in the jury's deliberations.

MM's testimony was confused and contradictory regarding the number and locations of the sexual assaults.[37]

The delay in disclosure was substantial. Four years passed before MM reported the sexual assaults to her grandmother.

West raised the possibility that MM was coached into making the allegations against him by her grandparents, who persisted in their desire to adopt her in the face of resistance from Jane.

MM's testimony regarding her mother's knowledge of the sexual assaults was not internally consistent. MM claimed at first that Jane did not believe her, but later asserted that Jane knew because she told MM that she had "peeked." And this contradiction coexisted with MM's testimony that Jane was present during several of the sexual assaults.

The latter circumstance bears discussion in connection with other odd circumstances. MM's startling revelation that Jane watched West sexually assault her on several occa-

sions but did and said nothing about it must be viewed in the light of contemporary scenes described by MM.

MM also claimed to have witnessed her mother Jane having sexual relations with her assailant, West. She further testified she saw Jane having sex with John. All of this was supposed to have happened while Jane lived at the ranch with her boyfriend Jack.

In other words, at the time of the sexual assaults on her daughter, Jane was being intimate with every male on West's property, including West, the man she knew to be her daughter's assailant, and she did so right in front of her daughter.

Jane, West and John denied the indiscriminate mating described by MM. But even in the absence of testimonial denial, the scenario painted by MM is a shocking departure from conventional morality and sensibilities.

The precise point to be made is that MM's testimony, taken as a whole, was inherently susceptible to doubt. The addition of evidence of a false allegation strikingly similar in circumstance to the incidents charged might very well have made that susceptibility painfully clear and reasonable to the jury.

In that event the jury might very well have experienced great difficulty insulating the charges against West from its natural reluctance to acknowledge a scenario of surpassing moral squalor.

All in all, we cannot say with any confidence that the trial court's error in barring evidence of MM's allegation was harmless beyond a reasonable doubt. On the contrary, we must conclude there was a very real and reasonable possibility that the error contributed to West's convictions.

Consequently, we vacate the judgment of the trial court and remand for a new trial.

### III. Prosecutorial misconduct.

██ In arguing to the jury that it should convict West so that MM could "know that she can be with God[,]" the prosecutor engaged in what the Hawai'i Supreme Court

---

**37.** *See Bohannon,* 378 N.E.2d at 991 (impact of false accusation evidence on complainant's credi-

bility enhanced where her testimony was inconsistent and confused).

recently in *State v. Rogan* categorized as "'argument[ ] calculated to inflame the passions or prejudices of the jury[,]'".[38] and thus indubitably engaged in prosecutorial misconduct.

That the argument harkened back to the circumstances of MM's disclosure of the sexual assaults, as the State argues, is no answer to West's complaint of misconduct. Though the circumstances of the disclosure at the family conference were pertinent to the case, the prosecutor's argument advanced none of their pertinent aspects.

Instead, the prosecutor's argument appealed to irrelevant and irrational elements that the supreme court in *Rogan* banished from trial in our system of criminal justice:

> Arguments that rely on racial, religious, ethnic, political, economic, or other prejudices of the jurors introduce into the trial elements of irrelevance and irrationality that cannot be tolerated.

(Emphasis in the opinion omitted.) [39]

 The supreme court in *State v. Sawyer* set out a matrix of factors for considering whether prosecutorial misconduct warrants reversal of a conviction:

> In reviewing allegations of prosecutorial misconduct, reversal of a conviction occurs only where the conduct deprived the defendant of a fair trial and affirmatively appears to have prejudicially affected his substantial rights. *State v. Clark*, 83 Hawai'i 289, 926 P.2d 194, *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996). Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of "whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Balisbisana*, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996) (quoting *State v.*

*Holbron*, 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995)) (citations and internal quotation marks omitted); *see also State v. Sanchez*, 82 Hawai'i 517, 528, 923 P.2d 934, 945 (App.), *cert. denied*, 84 Hawai'i 127, 930 P.2d 1015 (1996) (citation omitted). Factors considered are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant. *State v. Samuel*, 74 Haw. 141, 148, 838 P.2d 1374, 1378 (1992) (citation omitted).[40]

We apply the enumerated factors to this case.

Though the prosecutor's appeal to religious sentiment was clearly improper, it was a single instance without connection to any improper general theme or subtext promoted by the prosecutor.

And though we have observed that the case against West was not without weaknesses, we have also noted it was compelling enough without improper appeal to religion.

Perhaps most significant in the analysis in this case is that the trial court sustained West's prompt objection and immediately and specifically instructed the jury to ignore the reference to the deity.

The supreme court puts great store by curative instructions in the context of prosecutorial misconduct. Improper argument is generally considered "cured by the court's instruction to the jury[ ]" because it "call[s] for the application ... of the ordinary presumption that the jury abided by the court's admonition to disregard the statement." [41]

For example, in *Sawyer* the supreme court dealt with a prosecutor's argument which denigrated the court's instructions in favor of common sense, and found it to be "improper in the extreme." The supreme court held an immediate curative instruction nonetheless

---

**38.** *State v. Rogan*, 91 Hawai'i 405, 413, 984 P.2d 1231, 1239 (1999) (quoting American Bar Association (ABA) Prosecution Function Standard 3–5.8(c) (3d ed.1993)).

**39.** *Id.* (quoting the 1979 Commentary to ABA Prosecution Function Standard 3–5.8(c) (3d ed.1993)). ·

**40.** *State v. Sawyer*, 88 Hawai'i 325, 329 n. 6, 966 P.2d 637, 641 n. 6 (1998).

**41.** *State v. Cavness*, 46 Haw. 470, 473, 381 P.2d 685, 686 (1963).

effective in forestalling deprivation of the defendant's right to a fair trial.[42]

■ We conclude, therefore, that the prosecutor's misconduct is not a basis for vacating West's convictions.

By the same token, we do not have occasion to consider whether the misconduct bars retrial under double jeopardy principles.

We do not in any event consider the misconduct in this case commensurate with that in *Rogan*, which reversed Rogan's convictions and barred retrial under double jeopardy principles.[43]

■ The Hawai'i Supreme Court in *Rogan* held that under the double jeopardy clause of article I, section 10 of the Hawai'i State Constitution, reversal barring retrial is appropriate where "the prosecutorial misconduct is so egregious that, from an objective standpoint, it clearly denied a defendant his or her right to a fair trial." [44]

*Rogan* emphatically cautioned, however, that such a finding is reserved for the "exceptional circumstances" epitomized by that case.[45]

*Rogan* was the "exceptional circumstance" in which the especially egregious tactic of a direct appeal to racial prejudice was applied to several already highly volatile elements of the case.

In *Rogan*,[46] the twelve-year-old complainant arranged over the telephone for Rogan, a twenty-one-year-old black man, to come to her house while her mother and stepfather were not home. The sexual assaults charged against Rogan allegedly occurred then and there. The complainant had until then never met Rogan, who was a military man from Mississippi recently posted to Fort Shafter.

The complainant's mother, who to the complainant was "kind of strict," returned home and caught the two *in flagrante delicto*, and while trying to exit Rogan pushed or bumped the mother.

The prosecutorial argument condemned in *Rogan* "stated in relevant part that finding 'some black, military guy on top of your daughter' is 'every mother's nightmare.' " [47]

Our case, though perverse and squalid in its allegations, and as a result certainly susceptible to inflammation by comments regarding religion, did not involve the variety of acute community prejudices so interwoven in *Rogan*.

If permitted the license of bald analogy, we could say with some justification that the match was put to the log in our case, with uncertain prospects of ignition, while the gasoline was thrown on the fire in *Rogan*.

Furthermore, *Rogan* reserved a special condemnation for appeals to racial prejudice.

*Rogan* noted that such appeals represent "a brazen attempt to subvert a criminal defendant's [constitutional] right to trial by an impartial jury[.]" [48]

*Rogan* also deplored the tendency of such appeals to "foster jury bias through racial stereotypes and group predilections, thereby promoting an atmosphere that is inimical to the consideration of the evidence adduced at trial." [49]

Finally, *Rogan* cautioned that such appeals "threaten[ ] our multicultural society and constitutional values." [50]

Accordingly, the supreme court in *Rogan* held "that references to race that do not have an objectively legitimate purpose constitute a particularly egregious form of prosecutorial misconduct." [51]

The prosecutorial misconduct in our case is not so specially condemned.

**42.** *Sawyer*, 88 Hawai'i at 329 n. 6, 966 P.2d at 641 n. 6.

**43.** *Rogan* at 424, 984 P.2d at 1250.

**44.** *Id.* at 423, 984 P.2d at 1249.

**45.** *Id.* at 423 n. 11, 984 P.2d at 1249 n. 11.

**46.** *Id.* at 409–11, 984 P.2d at 1235–37.

**47.** *Id.* at 411, 984 P.2d at 1237.

**48.** *Id.* at 414, 984 P.2d at 1240.

**49.** *Id.*

**50.** *Id.*

**51.** *Id.* at 415–15, 984 P.2d at 1241.

We nonetheless strenuously disapprove of the prosecutor's appeal to religion.

The Hawai'i Supreme Court has "repeatedly noted" that "[t]he prosecution has a duty to seek justice, to exercise the highest good faith in the interest of the public and to avoid even the appearance of unfair advantage over the accused." More succinctly, "[t]he duty of the prosecutor is to seek justice, not merely to convict." [52]

The isolated instances of prosecutorial misconduct remaining in the face of repeated admonitions from our highest legal authority, born out of the heedless zeal to convict, require perhaps admonitions and deterrents with a finer point put on them.

## IV. Other issues on appeal.

West raises various other issues on appeal.

He complains that the trial court erroneously admitted evidence that, during two encounters after the alleged sexual assaults, MM hid from West. West argues that evidence of such conduct constituted inadmissible hearsay.

West also contends that the trial court should not have allowed Dr. Kepler to opine that the results of his examinations of the complaining witnesses named in the indictment were consistent with what the investigating detective told him about the cases. West characterizes this evidence as "hearsay within hearsay" and "improper opinion testimony that vouched for the credibility" of the complaining witnesses.

West argues that the trial .court allowed another instance of improper bolstering evidence when it admitted Jane's testimony that she no longer had any doubts about MM's allegations against West.

West also claims that the trial court abused its discretion when it allowed an expert to testify regarding the phenomenon of late reporting by abused children. Here again, the complaint is improper bolstering of the credibility of the complaining witness.

The same expert, who was not a medical doctor, was allowed to testify regarding medical findings in child sexual assault cases, which West condemns as testimony the expert was not qualified to give.

West further avers that the trial court abused its discretion in not granting his motion for mistrial. The complaining witness in counts ten and eleven refused to testify; consequently, the State dismissed those counts. West asserts incurable prejudice required mistrial because evidence concerning his alleged sexual assaults against that complaining witness had already been heard by the jury.

Upon thorough review and consideration, we find the foregoing various other points on appeal to be without merit.

## V. Jury instructions.

Because we are remanding for retrial, we take this opportunity for prophylactic comment upon a final issue raised by West on appeal.

West argues that the jury instructions defining the material elements of the offenses charged were erroneous because in each the requisite *mens rea* was ascribed to the attendant circumstance of the complainant's age rather than the result of conduct, sexual penetration.

The State maintains that the instructions clearly defined for the jury the material elements of the charges.

 In considering the jury instructions as a whole, we find them to be inconsistent and potentially misleading,[53] and we comment at some length to prevent similar problems in the future.

 Due process prohibits conviction of a defendant unless the jury finds that all material elements of the offense have been proved

**52.** *Id.* at 412, 984 P.2d at 1238. (internal quotation marks and citations omitted).

**53.** "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Loa*, 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996).

beyond reasonable doubt.[54] In addition, HRS § 701–114 provides, in pertinent part:

[N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt:

(a) Each element of the offense;

(b) The state of mind required to establish each element of the offense[.]

Under HRS § 702–205:

The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

The court's jury instructions as to count I of the indictment, which were for our purposes representative of its instructions as to all the other counts, read as follows:

In Count One of the Indictment, the Defendant, [West], is charged with the offense of Sexual Assault in the First Degree.

A person commits the offense of Sexual Assault in the First Degree if he knowingly subjects to sexual penetration another person who is less than fourteen (14) years old.

There are five material elements of the offense of Sexual Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.

These five elements are:

1. That during or about the period of February 1, 1993, through May 28, 1993, inclusive;

2. In the County of Maui, State of Hawaii;

3. [West];

4. Did knowingly subject [MM], a person less than fourteen (14) years old;

5. To an act of sexual penetration, to wit, fellatio.

Based on a plain reading of the enumerated elements of the offense, it is difficult to ascertain whether the state of mind "knowingly" modifies the attendant circumstances of MM's age, rather than the result of the conduct.[55]

■ The placement of the state of mind "knowingly" in the same sentence with and in the position of modifier of the attendant circumstance of MM's age may imply a misstatement of the law. In *State v. Buch*, the Hawai'i Supreme Court held that sexual assault in the first degree under HRS § 707–730(1)(b) is a strict liability offense with respect to the attendant circumstance of the complainant's age.[56]

More problematic is the possibility that the placement of the word "knowingly" in a sentence grammatically and spatially apart from the sentence setting forth the result of conduct element may imply that the state of mind need not be established as to that material element. Pursuant to HRS § 707–730(1)(b), however, the State had to prove beyond a reasonable doubt that West knowingly committed sexual penetration.

We do observe that the second sentence of the quoted instruction clearly and correctly conveys that the state of mind must be established for the result of conduct: "A person commits the offense of Sexual Assault in the First Degree if he knowingly subjects to sexual penetration another person who is less than fourteen (14) years old."

In reading the instructions as a whole the potentially misleading statement of the elements of the offense may well have been

---

54. *State v. Iosefa*, 77 Hawai'i 177, 182, 880 P.2d 1224, 1229 (App.1994) (citation omitted).

55. HRS § 707–730(1)(b) provides, in pertinent part:

(1) A person commits the offense of sexual assault in the first degree if:

. . . .

(b) The person knowingly subjects to sexual penetration another person who is less than

fourteen years old; provided this paragraph shall not be construed to prohibit practitioners licensed under chapter 453, 455, or 460, from performing any act within their respective practices.

56. *State v. Buch*, 83 Hawai'i 308, 316, 926 P.2d 599, 607 (1996).

cured by the preceding definition of the offense.

At the same time, however, it must be acknowledged that the trial court instructed the jurors that it was the material elements of the offense that required proof beyond a reasonable doubt, and not the definition of the offense: "The presumption of innocence is not a mere slogan but an essential part of the law that is binding upon you. It places upon the prosecution the duty of proving every material element of the offense charged against the defendant beyond a reasonable doubt."

Inasmuch as the issue in this case was whether the sexual assaults took place, and not whether West knew he was committing sexual penetration, and in light of our disposition of the case, we need not reach the question of error and its effect on the trial.

Nonetheless, in our view the instructions created a real potential for jury confusion, which the trial court should preclude on remand in order to eliminate the possibility that the jury could erroneously apply the state of mind requirement to the attendant circumstance of the age of the complainant, while erroneously and prejudicially not applying the state of mind requirement to the result of conduct of sexual penetration.

## VI. Conclusion.

Based on the foregoing, we vacate the second circuit court's July 20, 1998 judgment of convictions and sentence, and remand the case for a new trial on counts one, two, three, five, six, seven and eight, consistent with this opinion.