24 P.3d 648

STATE of Hawai'i, Petitioner–
Plaintiff–Appellee,

v.

Lloyd T. WEST, Respondent–
Defendant–Appellant.

No. 21844.

Supreme Court of Hawai'i.

May 30, 2001.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and Circuit Judge HIFO, assigned by reason of vacancy.[1]

Opinion of the Court by MOON, C.J.

Pursuant to Hawai'i Revised Statutes (HRS) § 641–13 (1993),[2] petitioner-plaintiff-appellee State of Hawai'i (the prosecution) timely petitions this court for a writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *State v. West*, 95 Hawaii 484, 24 P.3d 680 (App.2000). Therein, the ICA vacated the second circuit court's[3] judgment, guilty conviction, and sentence of respondent-defendant-appellant Lloyd T. West (Defendant) for seven counts of first degree sexual assault and remanded this case for new trial.

The alleged error in this case involves the Defendant's attempts, at trial, to introduce evidence that the Complainant made statements to a detective that she had been molested by a boy named Ashley in an unrelated sex assault. Defendant contended that the victim's statement regarding Ashley may have been false and that Defendant should be permitted to elicit evidence regarding the falsity of those statements because, if false, they were relevant to the Complainant's credibility.

The ICA held, in relevant part, that the trial court erroneously excluded the evidence of the allegedly false allegation. In its petition, the prosecution essentially argues that the ICA wrongly concluded that the evidence was admissible. We granted certiorari in this case to consider the admissibility of allegedly false statements by a complainant in a sexual assault case regarding an unrelated sexual assault. For the reasons stated herein, we reverse the ICA's decision and affirm the second circuit court's judgment, conviction, and sentence in this case.

Richard K. Minatoya, Deputy Prosecuting Attorney, on the writ and supplemental brief.

Linda C.R. Jameson, Deputy Public Defender, on the supplemental brief.

1. At the time the application for writ of certiorari was filed, there was a vacancy on the court due to the resignation of Associate Justice Robert G. Klein, and Circuit Judge Hifo was assigned as a substitute justice.

2. HRS § 641–13 provides in relevant part that: An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court . . .

. . . .

(5) From a ruling on a question of law adverse to the State where the defendant was convicted and appeals from the judgment[.]

3. The Honorable Shackley Raffetto presided over the trial in this matter.

## I.  BACKGROUND

Defendant was indicted on August 14, 1997 on, *inter alia*,[4] eight counts of sexual assault in the first degree, in violation of HRS § 707–730(1)(b) (1993), for acts of fellatio and genital penetration involving then-four-year-old Mary Minor[5] (MM). Trial commenced on April 28, 1998.

During Defendant's opening statement, in the context of explaining what MM had disclosed to the detective who investigated the assault, defense counsel stated:

> What else did [MM] tell the detective when she spoke to him? Well, she didn't limit her allegations of sexual molestation to—

At that point, the prosecution objected and asked to approach the bench. The following was discussed outside of the hearing of the jury:

> [THE COURT]: What's your objection?
>
> [THE PROSECUTION]: Counsel is going to question into—I'm assuming—other sexual acts with . . . people other than the defendant. Right now there's no actual 41[2][6] motion written. She's not allowed to say whether or not this child is alleging sexual misconduct on other perpetrators. Other perpetrators are not disclosed.
>
> Until counsel has a good-faith basis to attack credibility by bringing in other perpetrators to deny it, she should not be able to bring it in. Its improper. 41[2] precludes it.
>
> [THE COURT]: Okay.

---

4. Count nine was stricken from the indictment. During the trial, counts ten and eleven, charging Defendant with sexual assaults against a different individual were dismissed by the prosecution.

5. It is the policy of this court to use pseudonyms for victims of sexual assault in published opinions. The pseudonym "Mary Minor" is used in this opinion, as it was in the ICA opinion.

6. The prosecution actually said 413; however, it is clear from the context of the argument and the fact that there is no Rule 413 in the Hawai'i Rules of Evidence (HRE) that the prosecution was *actually referring to the requirement under HRE Rule 412 that a motion be filed in advance of trial.* HRE Rule 412 (1993), Hawaii's rape shield statute, provides in relevant part:

**Sexual assault cases; relevance of victim's past behavior** . . . .

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual assault, evidence of an alleged victim's past sexual behavior other than reputation or opinion evidence is not admissible to prove the character of the victim in order to show action in conformity therewith, unless such evidence is:

(1) Admitted in accordance with subsection (c)(1) and (2) and is constitutionally required to be admitted; . . .

. . . .

(c)(1) *If the person accused of committing sexual assault intends to offer under subsection (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin,* except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing, the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding subsection (b) of rule 104, if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which sexual assault is alleged.

(Emphasis added.)

[DEFENSE COUNSEL]: This is absolutely not 41[2]. We're talking about what a child made up to a detective, and she made allegations against other individuals.

She mentioned her mother and her grandmother in relation to it. And it's certainly—the [prosecution] wanted this for a motion in limine that's what the state should have done.

[THE COURT]: He did not know you were going to do this. ·

[DEFENSE COUNSEL]: It's in her statement to the detective.

Defense counsel's offer of proof was as follows:

I would tell the jury that she made allegations that when she was six and living with her grandmother, she was abused in her mother's presence at the home about a block and a half away from the grandmother's home by someone named Ashley.

She places other people there at the same time that this occurred. And being that *if* she's making up allegations, then allegations that she made against [D]efendant are equally suspect and it's certainly reasonable, and I don't think its fair to say that defense can't get into this in opening statement.

(Emphasis added.) Based on the foregoing, the trial court precluded defense counsel from raising any allegations of sexual abuse by anyone other than the defendant in her opening statement.

Prior to MM's testimony, defense counsel again raised the issue of MM's disclosure to the detective that she had been sexually assaulted by a person other than Defendant. Defense counsel contended the evidence she sought to admit did not involve "sexual conduct," but instead involved "other baseless allegations." The court then asked to see MM's statement to the detective in writing. Defense counsel explained that no transcript existed of the videotaped interview of MM by the investigating officer because the audio was "so bad" that the videotape was incapable of being transcribed. In lieu of a transcript, the court relied on representations by both attorneys as to the contents of the statement. Counsel for the prosecution and defense disagreed as to the contents of the relevant portions of MM's statement. Despite their disagreement, neither defense counsel nor the prosecution elicited testimony from the investigating detective regarding statements MM may have made about Ashley.

Based on her version of the videotaped interview, defense counsel explained that, when MM was interviewed by the detective, MM disclosed a "separate and distinct" incident of molestation by someone named Ashley. Defense counsel further argued that the testimony was relevant to the issues "whether the child makes up these allegations or has somehow been influenced to make such allegations," the "delay in reporting," and the "child's credibility." In arguing that the evidence was offered to impeach MM's credibility, defense counsel stated, *"I have no idea whether these allegations involving Ashley occurred or didn't occur. I assume that law enforcement did not believe they occurred because they didn't follow up on them."* (Emphasis added.) Additionally, when the trial court asked defense counsel how she knew whether MM's statements regarding the separate incident were true, defense counsel answered, *"I don't know whether it's true or not."* (Emphasis added.) Defense counsel later suggested that MM's mother would testify that she had never witnessed Ashley molesting MM, thereby contradicting MM's statement. *The prosecution disputed defense counsel's assertion that MM had stated in the interview that her mother was present when the alleged incident with Ashley occurred* and, thus, argued that MM's mother could not contradict MM's testimony in that regard. The trial court again sustained the prosecution's objection and precluded defense counsel from eliciting testimony from MM regarding Ashley.

During cross-examination of MM, defense counsel again requested permission to question MM about Ashley; the trial court again sustained the prosecution's objection. Then, prior to MM's mother being called as a witness, defense counsel once more sought to elicit the testimony regarding Ashley. This time, defense counsel cited *State v. Kelekolio,* 74 Haw. 479, 849 P.2d 58 (1993), for the proposition that "evidence of a complainant's

fantasies were legitimate fodder for the jury to consider[.]" After being given the opportunity to review *Kelekolio,* a case involving a cognitively-challenged complainant who allegedly fantasized about sexual encounters, the prosecution argued that *Kelekolio* required defense counsel to show "a habitual propensity or habitual fantasy" before MM's allegations regarding Ashley would be admissible. After hearing additional argument from both the prosecution and defense counsel, the trial court stated:

> The way I am reading this case is that the [s]upreme [c]ourt did make a distinction with regard to Rule [4]12 of the rules of evidence where the evidence is not of prior sexual conduct but relates to cognition about sexual activity and says basically that Rule [4]12 wouldn't apply if that evidence was otherwise admissible.

> And then as I understand it, turns then to decide or to examine whether statements about sexual fantasies of this particular complaining witness could be admissible as—to show her habit to fantasize and examines it from the point of view of habit-type evidence.

> It does point out that—in the note that the sheer number of prior instances of particular conduct is an important factor in establishing a habit, but in—perhaps even more important is evidence from which an inference of consistency and invariability can be drawn.

> Here *the problem is we don't know that it's a fantasy, and there is no evidence that it is a fantasy.* And secondly, there [are] not enough instances in my opinion to call it habitual propensity or habitual response. So I am going to sustain the objection.

(Emphasis added.) Thus, the trial court precluded defense counsel from eliciting any testimony about MM's allegations regarding Ashley. Subsequently, the jury found Defendant guilty of seven out of eight counts of first degree sexual assault submitted. On July 20, 1998, the trial court sentenced Defendant to a twenty-year term of imprisonment for each count, to be served concurrently, except that the first three counts were to run consecutively with the last four counts for a total of forty years, with credit for time served.

Defendant appealed, arguing that the trial court: (1) committed "numerous evidentiary errors" including, *inter alia,* preventing the defense from questioning MM and her mother about MM's allegations regarding Ashley; (2) erroneously denied Defendant's motion to dismiss; (3) failed to prevent prosecutorial misconduct; and (4) erroneously instructed the jury. In a published opinion, filed March 8, 2000, the Intermediate Court of Appeals (ICA) vacated the judgment based on its conclusion that "the trial court erroneously excluded impeachment evidence alleging that the complainant had made a false allegation of an unrelated but similarly situated sexual assault." *West,* 95 Hawaii at 487, 24 P.3d at 683. Moreover, the ICA concluded that the error was not harmless beyond a reasonable doubt based on the facts presented at trial. The ICA further concluded that "the prosecutor's misconduct [was] not a basis for vacating West's convictions" and that "various other points on appeal [were] without merit." *Id.* at 502, 503, 24 P.3d at 698, 699. Additionally, because it was remanding the case for retrial, the ICA provided "prophylactic" guidance with respect to the jury instructions, without determining whether the instructions given were reversibly misleading or confusing. *Id.* at 503, 24 P.3d at 699.

On March 22, 2000, the prosecution filed an application for a writ of certiorari, challenging the ICA's determination that testimony about MM's statement regarding the unrelated sexual assault was admissible. We granted certiorari to consider that question.

## II. STANDARDS OF REVIEW

[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that

require a "judgment call" on the part of the trial court.

*Kealoha v. County of Hawaii,* 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993). "[T]he trial court's determination of preliminary factual issues concerning the admission of evidence will be upheld unless clearly erroneous." *State v. McGriff,* 76 Hawai'i 148, 157, 871 P.2d 782, 791 (1994) (citation omitted). Finally, "the interpretation of the HRE entails a question of law reviewable de novo." *State v. Gano,* 92 Hawai'i 161, 166, 988 P.2d 1153, 1158 (1999).

## III. *DISCUSSION*

### A. *Admissibility of unrelated assault evidence*

On appeal, Defendant contended that MM's statement regarding Ashley's sexual assault, if proven to be false, was relevant to MM's credibility and, specifically, the truthfulness of her allegation against Defendant. The prosecution countered that MM's statement fell within the scope of HRE Rule 412, also known as Hawaii's rape-shield statute,[7] and that Defendant had not followed appropriate procedures for introducing such evidence. After stating that MM's allegation of molestation by Ashley "would have no relevance to her credibility unless it was indeed false," *West,* 95 Hawaii at 497, 24 P.3d at 693, the ICA "question[ed] the trial court's conclusion that there was no evidence of falsity," *id.,* and concluded that, on the basis of defense counsel's offer of proof, "the trial court should have concluded the evidence was relevant." *Id.* Then, in a footnote, the ICA cited

HRE Rule 104(b), suggesting that the ICA believed that the determination of falsity should have been made by the jury. *Id.* at 26 n. 30. Based on that apparent belief, the ICA reversed.

In its application for certiorari, the prosecution appears to accept the proposition that unrelated *false* allegations may be relevant to a complainant's credibility. However, the prosecution contends that there was no basis for determining the falsity of MM's unrelated allegation because defense counsel: (1) did not have a good faith basis to assert falsity; (2) failed to comply with the rules for introducing such evidence; and (3) failed to provide an adequate offer of proof. For the reasons that follow, we agree with the ICA's determination that MM's statement regarding Ashley "would have no relevance to her credibility *unless* it was indeed false." *West,* 95 Hawaii at 497, 24 P.3d at 693. However, we disagree that the falsity of MM's allegations was established or that the question should have been submitted to the jury.

### 1. **Threshold Requirement**

This court has never previously considered how a trial court should respond when a defendant, on trial for a sexual offense, seeks to admit evidence purportedly demonstrating that the complainant has made other allegedly false statements to the effect that he or she has been the victim of a separate sexual assault.[8] Courts that have addressed the admissibility of statements by complainants of unrelated sexual assaults in which the complainant was a victim [9] have uniformly

---

**7.** The term rape shield statute is used throughout this opinion to refer to any evidence rule the purpose of which is to shield the sex assault complainant from the improper admission of evidence of complainant's past sexual behavior.

**8.** As argued by Defendant and recognized by the ICA, this court in *Kelekolio* did note that sexual fantasizing was not "sexual conduct" for the purpose of HRE Rule 412. *See Kelekolio,* 74 Haw. at 521, 849 P.2d at 77. However, because we held in *Kelekolio* that the trial court properly excluded evidence of complainant's sexual fantasies due to defendant's failure to present *any* offer of proof that the fantasy evidence was not evidence of past sexual behavior, we did not need to evaluate the proper procedures or burden of proof for the introduction of such evidence. *Id.*

Accordingly, *Kelekolio* is analogous to but not on point with this case.

**9.** In many jurisdictions, this type of evidence is referred to as " 'prior false accusation' or 'prior false allegation' evidence". *State v. Quinn,* 200 W.Va. 432, 490 S.E.2d 34, 39 n. 5 (1997), *cert. denied, Quinn v. West Virginia,* 522 U.S. 1004, 118 S.Ct. 577, 139 L.Ed.2d 416 (1997). However, as was noted in *Quinn,* "this terminology may be misleading." *Id.* The use of the term "prior" implies that the statements were made prior to the complaint against the defendant and that they were made in the context of an accusation or allegation. Additionally, the use of the term "false" creates the presumption that the statements were indeed false. Notwithstanding the

held that evidence of *false* statements of unrelated sex assaults are not excluded by the rape shield statute because they are not evidence of sexual conduct. *See, e.g., Miller v. State,* 105 Nev. 497, 779 P.2d 87, 89 (1989); *Clinebell v. Commonwealth,* 235 Va. 319, 368 S.E.2d 263, 264 (1988); *cf. Kelekolio,* 74 Haw. at 521, 849 P.2d at 77 (stating that evidence that a cognitively-challenged complainant fantasized about sex would not be barred by Hawaii's rape shield statute because sexual fantasizing is not sexual conduct). "[F]abricated accusations of sexual abuse or sex assault are highly probative of a [complainant's] credibility concerning sexual assault charges." *Miller,* 779 P.2d at 89 (citing *Little v. State,* 413 N.E.2d 639, 643 (Ind.Ct.App.1980)). Under HRE Rule 608(b), evidence of specific acts, if probative of truthfulness, may be introduced for the purposes of attacking the credibility of a witness. Of course, the probative value of the evidence must always be weighed against the risk of prejudice, confusion, embarrassment, or undue delay. *See* HRE Rule 403.

■ *Clinebell, Miller,* and *Little, supra,* were among the cases cited by the ICA for the proposition that *false* allegations of unrelated sexual assaults are not excluded by the rape shield statute. *See West,* 95 Hawaii 494, n. 17, 24 P.3d at 690, n. 17. With this proposition, there can be no dispute. More importantly, however, and apparently overlooked by the ICA, each of these cases clearly recognizes that the admissibility of such statements is dependent upon its falsity and that, therefore, a threshold determination by the court that the statement regarding the unrelated sexual assault is false is required. *See Clinebell,* 368 S.E.2d at 266; *Little,* 413 N.E.2d at 643; *Miller,* 779 P.2d at 90.

In *Clinebell,* for example, the Virginia Supreme Court held that "[a] complaining witness' prior accusations are admissible ... *only if a court* makes a threshold determina-

tion that a reasonable probability of falsity exists." 368 S.E.2d at 266 (emphasis added). Similarly, in *Little,* the Court of Appeals of Indiana outlined the following analysis for determining the admissibility of an allegedly false accusation of sexual misconduct:

The focus is the falsity of the accusations. We believe that evidence of false accusations of similar sexual misconduct is admissible on the issue of the victim's credibility. *The allegations, however, must be demonstrably false.* As stated in *State v. Nab* [,] 245 Or. 454, 421 P.2d 388, 391 [(Ore.1966)]:

"It should be observed that the rule ... does not permit the trial to stray from the central issue of the guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons. That would be intolerable. *The rule is limited to the reception of evidence that the prosecutrix has admitted the falsity of the charges or they had been disproved.*"

413 N.E.2d at 643 (ellipsis in original) (emphases added). Finally, in *Miller,* the Nevada Supreme Court explained that,

[a]s a prerequisite to admitting a complaining witness' prior sexual assault and sexual abuse accusations and corroborative extrinsic evidence proving the falsity thereof, *a threshold inquiry must establish both the fact of the accusations and the falsity thereof even before defense counsel launches into cross-examination. See Covington v. Alaska,* 703 P.2d 436, 442 (Alaska [App.]1985); *Clinebell,* 368 S.E.2d at 266. Thus, if a defendant in a sexual assault case proposes to cross-examine the complaining witness about prior false sexual assault or sexual abuse allegations and introduce corroborative evidence, he must, prior to such questioning, file written notice of his intent. The trial court must then order a hearing, outside the presence

phrasing, the statements may have been made subsequent to the complaint against the defendant, may not have been an "accusation" at all, and the falsity is often precisely what is in dispute. For example, in the present case, the unrelated incident of which MM spoke purportedly took place after the alleged molestation by Defendant. The statements at issue were made

in the course of investigating the complaint against Defendant, in response to an officer's questioning and, thus, were not necessarily accusations or allegations at all. Moreover, the falsity of the unrelated statements is clearly in dispute. We, therefore use "other statements," "unrelated statements" or similar phrasing for such evidence.

of the jury, to determine the propriety of such questioning and the admissibility of corroborative evidence.

779 P.2d at 90 (emphasis added).

In fact, nearly every jurisdiction addressing this question has consistently required a preliminary determination of falsity prior to the admission of allegedly false statements of unrelated sexual assaults. *See Peeples v. State*, 681 So.2d 236, 238 (Ala.1995) (reiterating the rule in Alabama that "demonstrated falsity is the sine qua non of admissibility of ... evidence [of a victim's prior false allegations of sexual misconduct]."), *reh'g denied*, 681 So.2d 236 (1996); *Covington v. State*, 703 P.2d 436, 442 (Alaska App.1985) (adopting the rule from a majority of other courts that evidence of false accusations by complainant is only permitted "if the defendant makes a showing out of the presence of the jury that the witness' prior allegations of sexual assault were false, as, for example, where the charges somehow had been disproved or where the witness had conceded their falsity"); *accord State v. Hutchinson*, 141 Ariz. 583, 688 P.2d 209, 212–13 (Ariz.App.1984); *State v. Sullivan*, 244 Conn. 640, 712 A.2d 919, 923 (1998); *People v. Mason*, 219 Ill. App.3d 76, 161 Ill.Dec. 705, 578 N.E.2d 1351, 1356 (1991); *People v. Williams*, 191 Mich. App. 269, 477 N.W.2d 877, 879 (1991); *State v. Goldenstein*, 505 N.W.2d 332, 340 (Minn. App.1993); *State ex rel. Mazurek v. District Court of the Montana Fourth Judicial District*, 277 Mont. 349, 922 P.2d 474, 479 (1996); *People v. Passenger*, 175 A.D.2d 944, 946, 572 N.Y.S.2d 972 (N.Y.App.Div.1991); *State v. LeClair*, 83 Or.App. 121, 730 P.2d 609, 615 (Or.App.1986); *State v. Chamley*, 568 N.W.2d 607, 616 (S.D.1997); *Tinlin v. State*, 983 S.W.2d 65, 69 (Tex.App.1998); *State v. Quinn*, 200 W.Va. 432, 490 S.E.2d 34, 40 (1997), *cert. denied*, *Quinn v. West Virginia*, 522 U.S. 1004, 118 S.Ct. 577, 139 L.Ed.2d 416 (1997).

■ Furthermore, as some courts have explained, where the truth or falsity of a statement regarding an unrelated sexual assault is unknown, it falls within the purview of the rape shield statute and must be analyzed accordingly. *See, e.g., Little*, 413 N.E.2d at 643; *Quinn*, 490 S.E.2d at 40; *Booker v.*

*State*, 334 Ark. 434, 976 S.W.2d 918, 920 (1998) (holding that, where no evidence was presented to show whether the allegation evidence was true or false, the trial court did not abuse its discretion in excluding it). "[T]o permit reception of evidence which may be true or false would allow circumvention of the [r]ape [s]hield [statute]," *Little*, 413 N.E.2d at 643, because the jury may be tempted to consider evidence about an alleged victim's sexual conduct in order to determine the victim's credibility. *Id.* A juror's consideration of an alleged victim's sexual conduct for the purpose of determining the victim's credibility is precisely the circumstance that the rape shield statutes are designed to guard against. Based on the foregoing wealth of authority, we agree with the West Virginia Supreme Court that

> [m]ost if not all jurisdictions which have considered the applicability of rape shield laws to "other statements" evidence have answered this question by concluding that rape shield laws apply to such evidence *unless* the defendant makes a threshold showing to the trial judge outside the presence of the jury based on substantial proof that the other statements made by the alleged victim are false.

*Quinn*, 490 S.E.2d at 39 (emphasis added). As with any preliminary determination regarding admissibility, if an objection as to admissibility of testimony is made, counsel seeking to introduce the testimony may make a specific offer of what is expected to be proved by the testimony. *See* Haw.R.Civ.P. Rule 43(c) (2000). If the offer of proof is sufficient to establish falsity, the court, at an evidentiary hearing outside the presence of the jury, should determine the threshold issue.

Notwithstanding the uniformity with which the cases require a preliminary determination of falsity, courts have varied widely with respect to the standard of proof required. *See, e.g., State v. DeSantis*, 155 Wis.2d 774, 456 N.W.2d 600, 606–07 (1990) (requiring an "offer of proof" from which the jury could reasonably conclude the statement was false); *Commonwealth v. Bohannon*, 376 Mass. 90, 378 N.E.2d 987, 991 (1978) (requiring some "factual basis" of falsity); *Clinebell*,

368 S.E.2d at 266 (requiring a "reasonable probability of falsity"); *Hughes v. Raines,* 641 F.2d 790, 792 (9th Cir.1981) (requiring that it be "convincingly [shown] that the other charge was false"); *Miller,* 779 P.2d at 90 (requiring that falsity be established "by a preponderance of the evidence"); *Little,* 413 N.E.2d at 643 (requiring that the prior charges be "demonstrably false"); *Covington,* 703 P.2d at 442 (requiring proof of falsity, such as disproving charges or showing witness conceded falsity).

■ In Hawai'i, we have previously determined that, "[w]here the facts necessary to admissibility are disputed, the offering party has the burden of proof by a preponderance of the evidence." *Gano,* 92 Hawai'i at 172, 988 P.2d at 1164 (citing *State v. McGriff,* 76 Hawai'i 148, 157, 871 P.2d 782, 791 (1994) (citing *Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987))) (ellipsis and brackets omitted). We see no reason to depart from this rule in this context. Accordingly, we hold that, where a defendant seeks to admit allegedly false statements made by a complainant regarding an unrelated sexual assault, the trial court must make a preliminary determination based on a preponderance of the evidence that the statements are false. Correlatively, where the trial court is unable to determine by a preponderance of the evidence that the statement is false, the defendant has failed to meet his or her burden, and the evidence may be properly excluded. We now turn to the facts of this case.

## 2. Application to the facts of this case

In this case, the defense alleged that MM had "made up" the sexual assault by Ashley. In its offer of proof, the defense contended that, during the videotaped interview regarding the instant case with the investigator, MM stated that, when she was six years old and living with her grandmother, she was sexually molested in her mother's presence by Ashley.[10] Defense counsel argued that, "*if* [MM was] making up allegations [against Ashley], then allegations that she made against [D]efendant are equally suspect[.]" Defense counsel twice conceded to the court that she had no idea whether MM's statements regarding Ashley were true or false. Defense counsel merely stated that she "assume[d] that law enforcement did not believe [that the events involving Ashley] occurred because they didn't follow up on them." Later, defense counsel stated that MM's mother could contradict MM's statement regarding Ashley by testifying that she had never witnessed the occasion of which MM spoke.

The prosecution, however, argued that MM never said her mother was present during the assault by Ashley. As previously explained, the trial court requested a copy of MM's statement; however, defense counsel informed the court that the statement was contained in a videotaped interview, which defense counsel was unable to transcribe "because the audio [was] so bad." The court instructed defense counsel to write down what was said so that the court could consider the issue.

Based on counsel's offers of proof and the arguments presented on the issue, the trial court sustained the prosecution's objection on three separate occasions before finally determining that defense counsel had failed to offer any evidence that MM's statements were false.[11]

■ In its opinion, the ICA "question[ed] the trial court's conclusion that there was no

10. The language allegedly used by MM when being interviewed by the detective was not as concise. Rather, according to defense counsel's representation of MM's statement, MM related the events to the investigator using age-appropriate language. Such age-appropriate language is consistent with her testimony at trial.

11. The trial court actually said "the problem is we don't know that [the child's statements] are a *fantasy,* and there is no evidence that it is a *fantasy.*" However, based on our reading of the entire transcript, the trial court's use of the term

"fantasy" was based on the immediately preceding discussion surrounding this court's holding in *Kelekolio,* a case in which the defendant sought to introduce evidence of the complainant's fantasies rather than false statements. In the context of this case, however, it is clear that Defendant was seeking to introduce evidence of Complainant's allegedly *false* statements, and not fantasies. Thus, we read the trial court's determination to have been that defense counsel presented no evidence that the statements were false.

evidence of falsity." *West,* 95 Hawaii at 497, 24 P.3d at 693. The ICA then went on to scrutinize defense counsel's offers of proof and concluded that, "[o]n [the] basis [of defense counsel's offer of proof], we believe the trial court should have concluded the evidence was relevant." *Id.* We agree that, had the trial court determined that the statements were false, the evidence would have been relevant; however, as previously articulated, the ICA's conclusion of "relevancy" is based on its erroneous assumption that the *question* regarding the falsity of the statements in the first instance was a matter for determination by the jury. Notwithstanding its erroneous assumption, the ICA clearly and summarily disregarded the trial court's determination that there was no evidence of falsity. We take this opportunity to reiterate that fact-finding is the fundamental responsibility of the judge of the facts at trial. *See Maine v. Taylor,* 477 U.S. 131, 145, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). "As [the United States Supreme Court] frequently has emphasized, appellate courts are not to decide factual questions *de novo,* reversing any findings they would have made differently." *Id.* (citations omitted). Rather,

> the trial court's determination of preliminary factual issues concerning the admission of evidence will be upheld unless clearly erroneous. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed.

*McGriff,* 76 Hawai'i at 157, 871 P.2d at 791 (citations and internal quotation marks omitted).

■ We now examine the evidence of falsity adduced to determine whether the trial court's ruling was clearly erroneous. At trial, defense counsel put forth law enforcement's failure to "follow up" on MM's disclosure regarding Ashley as "proof" of the falsity of MM's statements. Despite the fact that defense counsel provided no basis for her assumption that MM's statements regarding Ashley had not been investigated,[12] the failure to investigate or prosecute does not establish the falsity of the statements. *See Peeples,* 681 So.2d at 238 (stating that "the mere showing that a nolle prosequi had been entered as to the collateral allegations did not establish falsity" (citation omitted)); *Hutchinson,* 688 P.2d at 212–13 (determining that dismissal of a prior unrelated sex assault case for lack of probable cause does not establish the falsity of the accusation for admissibility purposes); *Hughes,* 641 F.2d at 792 (stating that "[t]he fact that the district attorney chose not to prosecute, in itself, could mean no more than that he decided he did not have sufficient evidence to obtain a conviction"); *accord Lopez v. State,* 18 S.W.3d 220, 225–26 (Tex.Crim.App.2000).

Defense counsel's next basis for admission was that MM's mother, if allowed to testify, would contradict MM's statement that her mother witnessed the assault. However, due to the lack of a transcript and the inability of counsel to agree on what was actually stated, there was no evidence that MM had actually alleged that her mother was present during the alleged molestation by Ashley.

Finally, by defense counsel's own repeated admissions, it was unknown whether MM's statement that she was assaulted by Ashley was false. When considering the whole of the offer of proof submitted by Defendant on the falsity of MM's statement, we believe—as did the trial court—that Defendant, at most, established that the falsity of MM's allegation regarding Ashley was unknown. Therefore, Defendant failed to meet his burden to show by a preponderance of the evidence that MM's statements were false, and we cannot conclude that the trial court clearly

12. From the record, it appears that defense counsel's only basis for assuming MM's statements were not being investigated was the absence in the detective's reports (presumably referring to the reports in the instant case) of any further investigation of Ashley. However, as the prosecution points out, any investigation of Ashley would be contained in a separate report that would not necessarily be indicated in the detective's investigative report regarding the allegations against Defendant. Furthermore, the record contains no indication that defense counsel ever attempted to ascertain whether the statements regarding Ashley were being investigated or were true.

erred in excluding any evidence of MM's statement. Accordingly, we hold that the ICA erroneously reversed the trial court's decision to exclude evidence of MM's statement regarding the alleged unrelated sexual assault.

## B. *Harmless Error Analysis*

Having determined that the ICA was incorrect in concluding that the trial court erred in the first instance, it is unnecessary to examine the ICA's subsequent harmless error analysis. *West,* 95 Hawaii at 499–500, 24 P.3d at 695–696. However, we would be remiss if we did not take this opportunity to comment on the ICA's failure to present an impartial and balanced review of the record and inappropriate commentary on the credibility of a witness.

In its analysis of whether there was a reasonable possibility that the trial court's error (i.e., refusal to allow testimony regarding MM's statement about Ashley) contributed to Defendant's convictions, the ICA stated:

[T]he State's case, though compelling for reasons previously discussed,[13] was not overwhelming, so we cannot conclude that the evidence excluded would have been but a trifle in the jury's deliberations.

MM's testimony was confused and contradictory regarding the number and locations of the sexual assaults.

The delay in disclosure was substantial. Four years passed before MM reported the sexual assaults to her grandmother.

[Defendant] raised the possibility that MM was coached into making the allega-

tions against him by her grandparents, who persisted in their desire to adopt her in the face of resistance from [MM's mother].

MM's testimony regarding her mother's knowledge of the sexual assaults was not internally consistent. MM claimed at first that [her mother] did not believe her, but later asserted that [her mother] knew because she told MM that she had "peeked." And this contradiction[14] coexisted with MM's testimony that [her mother] was present during several of the sexual assaults.

The latter circumstance bears discussion in connection with other *odd* circumstances. MM's *startling* revelation that [her mother] watched [Defendant] sexually assault her on several occasions but did and said nothing about it must be viewed in the light of contemporary scenes described by MM.

MM also claimed to have witnessed her mother ... having sexual relations with her assailant, [Defendant]. She further testified she saw [her mother] having sex with [John Johnson (Johnson), a co-resident of Defendant's ranch].[15] All of this was supposed to have happened while [her mother] lived at the ranch with her boyfriend Jack.

In other words, at the time of the sexual assaults on her daughter, [MM's mother] was being intimate with every male on [Defendant's] property, including [Defendant], the man she knew to be her daughter's assailant, and she did so right in front of her daughter.

---

**13.** In its earlier discussion regarding the weight of MM's, versus Defendant's, credibility in this case, the ICA had recognized that "[Defendant] had the means, the ostensible motive[,] and the opportunity. MM made her charges in childish language but in startling clinical detail, which militated against any implications of coaching, either by adults or other children. Moreover, the incidents as described were heartrending and were made all the more affecting by the circumstances of their disclosure at the family conference." *West,* 95 Hawaii at 499, 24 P.3d at 695.

**14.** We do not perceive the foregoing as a contradiction or internal inconsistency. Despite the

ICA's characterization of this evidence, it seems entirely possible that MM's mother did see the molestation *and* responded in disbelief when MM tried to talk about it.

**15.** We note here that the ICA's opinion refers to the co-resident as "John Smith," *see West,* 95 Hawaii at 488, 24 P.3d at 684; however, the trial transcripts indicate that the co-resident's name is John Johnson. The ICA opinion also identifies the Maui Police Department detective as "John Johnson." *See id.* at 488, 24 P.3d at 684; however, the record reveals that the detective's name is "Darrell Johnson."

[MM's mother], [Defendant] and [Johnson] denied the *indiscriminate* mating described by MM. But even in the absence of testimonial denial, *the scenario painted by MM is a shocking departure from conventional morality and sensibilities.*

The precise point to be made is that *MM's testimony, taken as a whole, was inherently susceptible to doubt.* The addition of evidence of a false allegation strikingly similar in circumstance to the incidents charged *might very well have made that susceptibility painfully clear and reasonable to the jury.*

In that event the jury might very well have experienced great difficulty insulating the charges against [Defendant] from its *natural reluctance to acknowledge a scenario of surpassing moral squalor.*

All in all, we cannot say with any confidence that the trial court's error in barring evidence of MM's allegation was harmless beyond a reasonable doubt. On the contrary, we must conclude there was a very real and reasonable possibility that the error contributed to [Defendant's] convictions.

Consequently, we vacate the judgment of the trial court and remand for a new trial.

*West,* 95 Hawaii at 500, 24 P.3d at 696 (emphases added) (footnote omitted).

When reviewing the record to determine whether an error could have contributed to the conviction, appellate courts must endeavor to objectively review all the evidence and to present that evidence in a balanced and judicious manner. Indeed, "[e]ssential to the ethic of fairness in our system of criminal jurisprudence is the responsibility of a trial judge [(and, in this instance, an appellate judge)] to maintain the attitude and appearance of impartiality." *State v. Pokini,* 55 Haw. 640, 645, 526 P.2d 94, 101 (1974); *see generally In the Matter of Water Use Permit Applications,* 94 Hawai'i 97, 124, 9 P.3d 409, 436 (recognizing that the same exacting standards of fairness, impartiality, and independence of judgment apply in all adjudicative proceedings, whether before administrative agencies or any court of law), *reconsidera-tion denied,* 94 Hawai'i 97, 9 P.3d 409 (2000). Consequently, appellate courts must be mindful to avoid commenting on the subjective believability of any particular witness or evidence. *See State v. Buch,* 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) ("[A]n appellate court will not pass upon issues dependant upon the credibility of witnesses[.]"). The appellate court's responsibility to avoid commenting on the credibility of a witness is especially imperative when the case is to be remanded for a new trial. Although our ruling today negates remand of this case, it is worth noting that, as appellate judges, we have a responsibility to avoid unnecessary and inappropriate comments that could, on remand, influence the trial judge or the attorneys, and, in turn, potentially the jury. *Cf. Pokini,* 55 Haw. at 645, 526 P.2d at 101 (recognizing that a court's views on the merits of a party's position are "necessarily influential" on the jury).

In its analysis of the evidence presented at trial, the ICA opined that MM's testimony was "inherently susceptible to doubt" based on its assessment that (1) MM's testimony was "confused," (2) the delay in disclosure was substantial, and (3) physical evidence was absent. However, notably omitted from the ICA opinion is any reference to the expert testimony of Dr. Nalani Archibeque, a child psychologist, who testified extensively as to the general dynamics of children who have been sexually assaulted or abused. Specifically, Dr. Archibeque testified that: (1) some child victims of sexual assault develop survival mechanisms, such as avoidance and suppression, that enable the child to mask distress and appear asymptomatic; (2) child victims of molestation are often unable to remember or relate exact details of an assault; (3) anywhere from two-thirds to three-fourths of children do not tell anyone right away; and (4) eighty-five per cent of children who have experienced sexual abuses bear no physical evidence of that fact.

In further assessing the non-believability of MM's testimony, the ICA stated that MM's mother, Defendant, and Johnson, all "denied the indiscriminate mating described by MM." Again, the ICA failed to mention that Johnson's testimony corroborated MM's

testimony when he stated that MM was left at the ranch by her mother a couple of times per week for the entire day and that, during those days, "[s]ometimes [MM would] be at [Johnson's] apartment. Sometimes she'd be at [Defendant's] place" with Defendant. Johnson's testimony directly contradicted Defendant's statement that he had *never* been alone with MM, and MM's mother's statement that she never left MM alone at the ranch. Johnson's testimony also corroborated MM's testimony that her mother was often intoxicated, which directly contradicted Defendant's testimony.

■ We believe that the exclusion of the above-mentioned testimony from the ICA's exposition of the record resulted in an imbalanced presentation of the evidence. Furthermore, the ICA's commentary, as emphasized *supra*, implies that the circumstances of MM's alleged molestation were so morally "shocking" that MM simply could not reasonably be believed by the jury. In our view, the ICA's comments regarding the credibility of the evidence were inappropriate, particularly in a case that was intended to be remanded for new trial.

■ Moreover, the ICA's assessment that "the scenario painted by MM is a shocking departure from conventional morality and sensibilities" presents us with the opportunity to reiterate that triers of fact, as opposed to appellate courts, are primarily responsible for assessing not only the credibility of the witnesses, but also "conventional morality and sensibilities."

■ In summary, when reviewing the record to determine whether an error could have contributed to the conviction, appellate courts must objectively review all the evidence and avoid commenting on its subjective believability, especially the credibility of the witnesses. Providing a more balanced perspective of the evidence presented at trial and resisting the temptation to subjectively comment on the evidence would "foster[ ] respect for the law in general by offering visible evidence of the judiciary's integrity[,]"

*Pokini,* 55 Haw. at 645, 526 P.2d at 101, and thereby promote and enhance public trust and confidence not only in the neutrality of the appellate process, but in the justice system as a whole.

## C. Jury Instructions

After reversing Defendant's conviction on the foregoing evidentiary issue and remanding for retrial, the ICA issued "prophylactic" guidance on the jury instructions without deciding whether the jury instructions constituted an independent basis for reversal. *West,* 95 Hawaii at 503–505, 24 P.3d at 699–701. Because we now reverse the ICA and affirm the trial court with respect to the evidentiary issue, we examine the merits of Defendant's point of error with respect to jury instructions.

■ On appeal, Defendant argued that the trial court's instructions on the eight counts of sexual assault in the first degree were "patently defective" because each of the eight instructions erroneously "ascribed" a "knowingly" state of mind to the attendant circumstances of the complainant's age [16] and did not clarify for the jury that "knowingly" applied to the conduct of sexual penetration. The trial court's full instruction on the definition of sexual assault in the first degree was as follows:

A person commits the offense of sexual assault in the first degree if he knowingly subjects to sexual penetration another person who is less than 14 years old.

There are five material elements of the offense of sexual assault in the first degree, each of which the prosecution must prove beyond a reasonable doubt.

These five elements are; one that *during or about the period of February 1, 1993 through May 28, 1993,* inclusive; two, *in the county of Maui, State of Hawaii;* three, *[Defendant];* four, *did knowingly subject [MM], a person less than 14 years*

---

16. Both the prosecution and defense acknowledge that, under the statute with which Defendant is charged, a defendant is strictly liable for the element of a victim's age. *See State v. Buch,* 83 Hawai'i 308, 316, 926 P.2d 599, 607 (1996). Thus, the jury was not required to find that Defendant "knew" MM was under the age of fourteen. *See id.*

old; five, to *an act of sexual*[17] *penetration, to wit, fellatio.*

(Emphases added.) We believe that the above instruction accurately defines the offense of first degree sexual assault. When read together, the adverb "knowingly" in the last sentence modifies the transitive verb "subject," the object of which is the phrase "to an act of sexual penetration" and together describe the conduct to which MM was subjected. Grammatically, it is clear that knowingly does not modify "a person less than 14 years old." The jury, being instructed to consider all of the instructions as a whole and in light of each of the other instructions, and being instructed on the definition of "knowingly" with respect to the conduct, attendant circumstances, and result, may be presumed to have understood that "knowingly" applied to Defendant's sexual penetration. Moreover, even if the jury erroneously applied "knowingly" to the Defendant's state of mind with respect to MM's age, that application was clearly not prejudicial because Defendant is strictly liable for his conduct toward MM. *See Buch*, 83 Hawai'i at 316, 926 P.2d at 607; *see also State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) ("Erroneous instructions are ... ground[s] for reversal *unless it affirmatively appears from the record as a whole that the error was not prejudicial.*" (Emphasis added.) (Citation omitted.)). Accordingly, we hold that Defendant's argument with respect to the jury instructions is without merit.

Defendant's remaining points of error on appeal are likewise without merit. Accordingly, as did the ICA, we affirm Defendant's conviction on all other grounds.

## IV. *CONCLUSION*

Based on the foregoing, we reverse the decision of the ICA and affirm the judgment of conviction and sentence of the trial court.

---

17. The first of the eight instructions pertaining to each of the eight counts of first degree sexual assault apparently inadvertently omitted the word "sexual" before penetration. However, the next seven instructions included the word "sexual" and were otherwise identical. This inadvertent omission is of no consequence to our holding or to the outcome of this case.